IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| TBL HOLDINGS LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>PHILIPS LIGHTING HOLDING B.V. and<br><br>PHILIPS LIGHTING NORTH AMERICA CORPORATION,<br><br>*Defendants.* | Civil Action No. 6:19-cv-38<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff TBL Holdings LLC ("TBL"), by and through its attorneys, brings this action and makes the following allegations of patent infringement against Defendants Philips Lighting Holding B.V. ("Philips Netherlands") and Philips Lighting North America Corporation ("Philips North America") (collectively, "Philips") relating to U.S. Patent No. 7,180,529 ("the '529 Patent" or "the patent-in-suit").

**PARTIES**

1.  TBL is a Texas Limited Liability Company with its principal place of business located at 2307 Rio Grande St., Austin, TX 78705.

2.  On information and belief, Philips Netherlands is a corporation organized and existing under the laws of the Netherlands with its principal place of business at High Tech Campus 7, 5656 AE Eindhoven, The Netherlands.

3.  On information and belief, Philips North America is a corporation organized and existing under the laws of Delaware with its principal place of business at 200 Franklin Square

1

Drive, Somerset, New Jersey 08873. Philips North America is registered to do business in the State of Texas and can be served through its registered agent corporation, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street Suite 620, Austin, TX 78701.

4. On information and belief, Philips North America maintains a physical office in Austin, Texas, in which it employs a variety of professionals involved in the design, production, marketing and/or sale of the products accused in this lawsuit. Such employees include industrial designers, engineers, supply chain managers, and sales staff.

5. On information and belief, Philips offers infringing products for sale throughout the United States, including in the Western District of Texas.

**JURISDICTION AND VENUE**

6. This action arises under the patent laws of the United States, Title 35 of the United States Code. Accordingly, this Court has exclusive subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

7. Upon information and belief, this Court has personal jurisdiction over Philips in this action because Philips has committed acts within the Western District of Texas giving rise to this action and Philips has established minimum contacts with this forum such that the exercise of jurisdiction over Philips would not offend traditional notions of fair play and substantial justice. Philips, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the patent-in-suit. Moreover, Philips North America is registered to do business in the State of Texas, and has appointed Corporation Service Company dba CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street Suite 620, Austin, TX 78701, as its agent for

2

service of process.

8. Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Philips has a physical presence and a regular and established place of business in the Western District of Texas. Further, upon information and belief, Philips has transacted business in the Western District of Texas and has committed acts of direct infringement in the Western District of Texas.

## OVERVIEW OF U.S. PATENT NO. 7,180,529

9. U.S. Patent Application No. 10/326,638 ('638 Application) was filed on December 19, 2002 and subsequently issued as U.S. Patent No. 7,180,529 ('529 Patent), entitled "Immersive Image Viewing System and Method," on February 20, 2007. A true and correct copy of the '529 Patent is attached hereto as Exhibit 1.

10. It is well established that modern viewers of multimedia content crave an immersive viewing experience of that content. That is, viewers don't want to feel as though they are simply watching content on a screen. Rather, they want to feel as though they are present in the action and a part of the story.

11. In some contexts, the viewer's "sense of immersiveness" is enhanced by increasing the size of the images being viewed. Ex. 1 ['529 Patent] at 1:13-14. "For example, the entertainment industry provides panoramic display technologies such as Cinemascope and IMAX wherein the image is much larger than the observer viewing the image." *Id*. at 1:14-18.

12. "However, the increase in the image size relative to the observer comes at a high cost" (id. at 1:18-19), and in many situations, such as when the viewing takes place in an individual home, the size of the images which can be displayed is limited by the television, monitor, and/or projection equipment available.

13. Where simply increasing the image size is not possible, the viewer's sense of

immersiveness can be amplified by "reduc[ing] the intrusion of the outside world upon the viewer's field of view of a displayed image so as to not contradict or detract from the displayed image." *Id*. at 1:29-31.

14. "Common means of excluding the outside world from a viewing experience are special venue entertainments, an example of which is amusement park rides. Such special venue entertainments control the viewer/environment relationship to enhance a sense of immersion, but are limited in the kinds of content they can enhance by the physical inflexibility or cost of altering the environment to suit widely different content needs." *Id*. at 1:32-39.

15. Again, however, when the viewing takes place in an individual home, the ability to exclude the outside world from the viewer's immersiveness is limited by the features of the viewing location.

16. The '529 Patent recognizes that "there exists a need for a system/method to reduce the intrusion of the environment for a single venue, and also to provide a means to reduce this intrusion dynamically such that multiple immersive experiences can be delivered cost effectively in a single venue." *Id*. at 1:40-44.

17. In order to create an immersive viewing environment, the '529 Patent teaches the use of a plurality of viewing areas, including a first viewing area and a second viewing area. "First and second viewing areas **12**, **14** are separate and distinct areas. They can be adjacent, proximate, and/or opposite each other." *Id*. at 3:21-23. What's more, "[s]econd viewing area **14** can be comprised of a single or plurality of sections. *Id*. at 3:23-24.

18. Figure 1 of the '529 Patent depicts an isometric view of an immersive viewing environment.



Ex. 1 ['529 Patent] at Fig. 1.

19. According to Figure 1, the first viewing area **12**, on which the image is displayed, is surrounded by second viewing area **14**, having five sections. "More particularly, second viewing area **14a** is shown as a floor or base of viewing environment **16**; viewing areas **14b** and **14d** are the sides walls adjacent first viewing area **12**; viewing area **14c** is the top wall (e.g., ceiling) of viewing environment **16**; and viewing area **14e** is the side wall opposite first viewing area **12**." *Id*. at 3:27-32.

20. In order to create an immersive viewing environment, as is further described and explained in the specification, the '529 Patent teaches the displaying of a lighting environment on these secondary viewing areas and the coordination of that lighting environment to what is occurring on the main viewing area so that the user feels like a part of the scene. *See id*. at 3:45-4:12.

21. The specification of the '529 Patent provides this specific example:

> For example, envision a "Casablanca"-type or Humphrey Bogart-type movie having a scene in a café wherein a ceiling fan is slowly rotating overhead. This scene would be displayed on first viewing area **12** using display device **18**. On second viewing area **14**, means **20** would affect the lighting environment (i.e., modulate the chroma, hue, and value as well as the direction, motion, and form of light impinging second viewing area **14**) to generate an effect of a ceiling fan slowly sweeping past a light. Such an effect may require light impinging on more than one second viewing area **14**, for example, reflections and/or shadows of the ceiling fan may impinge on sections **14***c*, **14***b*, and **14***d*. Accordingly, an observer looking directly at second area **14** would view flashing lights. However, an observer viewing the scene displayed on first viewing area **12** (i.e., the observer is looking directly at the scene displayed on first viewing area **12**) would have a sense of immersiveness resulting from the appropriate lighting environment being displayed on second viewing area **14**. As such, the lighting environment displayed on second viewing area **14** does not detract from the displayed scene. Rather, the lighting environment enhances the immersiveness of the scene. Coordinating means **22** provides the synchronizing/referencing of the scene with the lighting environment so as to generate an immersive viewing scene.

Ex. 1 ['529 Patent] at 4:13-37

22. The innovativeness of the solutions taught in the '529 Patent are clear from the industry's myriad references to it. The '529 Patent has been cited more than fifty times by companies who specialize in providing top quality home entertainment, including but not limited to Comcast, Microsoft, Sharp, Sony, and Philips Netherlands itself.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,180,529

23. TBL restates and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

24. TBL is the owner by assignment of the '529 Patent.

25. On information and belief, Philips designs, makes, uses, sells, imports and/or offers for sale in the United States products and/or services including the Philips 5000 series Smart Ultra HDTV televisions, the Philips 5704 series AndroidTV televisions, the Roku TV 4000 series LED-LCD televisions (collectively, the "Philips Televisions").

26. On information and belief, Philips designs, makes, uses, sells, imports and/or offers for sale in the United States products and/or services including the Philips Hue Bridge, the Philips Hue application, the Philips Hue Sync application, Philips E26 light bulbs, Philips PAR38 light bulbs, Philips BR30 light bulbs, Philips E12 light bulbs, Philips GU10 light bulbs, Philips PAR116 light bulbs, Philips Hue Lighstrips, Philips Hue light bars, Philips Hue Beyond ceiling lights and table lamps, Philips Hue Signe floor lights and table lights, Philips Hue Bloom light bulbs, Philips Hue Ascend floor lights, table lights, pendants, and wall lights, Philips Hue Enchant pendants, and Philips Hue Wellness table lamps (collectively, the "Philips Hue Components").

27. On information and belief, Philips designs, makes, uses, sells, imports and/or offers for sale in the United States products and/or services including the Philips Televisions and the Philips Hue Components (collectively, the "Philips Hue System").

28. On information and belief, the Philips Hue System displays a scene on a first viewing area, the scene comprised of at least one image and that has image content. For example, the Philips Hue System allows users to "enjoy [their] favorite action films and sporting events in stunning 4K Ultra HD resolution."[1]

29. On information and belief, the Philips Hue System displays a lighting

---

[1] Philips 5000 series Smart Ultra HDTV website, available at https://www.usa.philips.com/c-p/75PFL5603_F7/5000-series-smart-ultra-hdtv-with-net-tv-and-high-dynamic-range (last accessed February 4, 2019).

environment on a second viewing area separate from the first viewing area and which is not spatially coincident with the first viewing area, the first and second viewing areas defining the immersive viewing environment for an observer for viewing the scene, wherein the lighting environment does not have image content. For example, the Philips Hue System "create[s] experiences by syncing your Philips Hue lights with your entertainment content."[2]

30.     On information and belief, the Philips Hue System coordinates the simultaneous displaying of the scene and the lighting environment on the first and second viewing areas, respectively, within the immersive viewing environment such that the lighting environment enhances the coordinated displayed scene to generate an immersive viewing scene. For example, the Philips Hue System allows users to "[e]njoy immediate and immersive light effects that match what's happening on [their] screen" by "[t]urn[ing] every light into a special effect…that perfectly complement the cinematography of each movie."[3]



---

[2] Philips Hue website, available at https://www2.meethue.com/en-us/entertainment/video (last accessed February 4, 2019).
[3] *Id*.

*Id*.

31. On information and belief, Philips has directly infringed and continues to directly infringe the '529 patent by, among other things, making, using, offering for sale, importing, and/or selling the Philips Hue System.

32. By making, using, testing, offering for sale, importing, and/or selling the Philips Hue System, Philips has injured TBL and is liable to TBL for directly infringing one or more claims of the '529 patent, including at least claim 14, pursuant to 35 U.S.C. § 271(a). The Philips Hue System practices each and every limitation of at least claim 14.

33. On information and belief, Philips also indirectly infringes the '529 patent by active inducement under 35 U.S.C. § 271(b).

34. Philips has had knowledge of the '529 patent since at least January 9, 2019, when it received a letter identifying the '529 patent and notifying it of its infringement. In the alternative, Philips has had knowledge of the '529 patent since at least service of this Complaint or shortly thereafter, and on information and belief, Philips knew of the '529 patent and knew of its infringement, including by way of this lawsuit.

35. On information and belief, Philips intended to induce patent infringement by third-party customers and users of the Philips Hue System and had knowledge that the inducing acts would cause infringement or was willfully blind to the possibility that its inducing acts would cause infringement. Philips specifically intended and was aware that the normal and customary use of the accused products would infringe the '529 patent. Philips performed the acts that constitute induced infringement, and would induce actual infringement, with knowledge of the '529 patent and with the knowledge that the induced acts would constitute infringement. For example, Philips provides the Philips Hue System that has the capability of operating in a

manner that infringes one or more of the claims of the '529 patent, including at least claim 14, and Philips further provides documentation and training materials that cause customers and end users of the Philips Hue System to utilize the products in a manner that directly infringe one or more claims of the '529 patent. By providing instruction and training to customers and end-users on how to use the Philips Hue System in a manner that directly infringes one or more claims of the '529 patent, including at least claim 14, Philips specifically intended to induce infringement of the '529 patent. On information and belief, Philips engaged in such inducement to promote the sales of the Philips Hue System, *e.g.,* through Philips' user manuals, product support, marketing materials, and training materials to actively induce the users of the accused products to infringe the '529 patent. Accordingly, Philips has induced and continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '529 Patent, knowing that such use constitutes infringement of the '529 Patent.

36. To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '529 patent.

37. As a result of Philips' infringement of the '529 Patent, TBL has suffered monetary damages, and seeks recovery in an amount adequate to compensate for Philips' infringement, but in no event less than a reasonable royalty for the use made of the invention by Philips together with interest and costs as fixed by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff TBL respectfully requests that this Court enter:

1. A judgment in favor of Plaintiff TBL that Philips has infringed the '529 Patent, either literally and/or under the doctrine of equivalents;

2. An award of damages resulting from Philips' acts of infringement in accordance with 35 U.S.C. § 284;

3. A judgment and order requiring Philips to provide accountings and to pay supplemental damages to TBL, including, without limitation, prejudgment and post-judgment interest; and

4. Any and all other relief to which TBL may show itself to be entitled.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), TBL requests a trial by jury of all issues so triable by right.

Dated: February 6, 2019

*/s/ Bradford J. Black*
BRADFORD J. BLACK (SBN 24086243)
bblack@bradfordblack.com
**BRADFORD BLACK P.C.**
4 Embarcadero Ctr., Suite 1400
San Francisco, CA 94111
Telephone: (415) 813-6211
Facsimile: (415) 813-6222

MATT OLAVI (SBN 24095777)
(*pro hac vice to be submitted*)
molavi@olavilaw.com
**OLAVI LAW P.C.**
401 Congress Avenue, Suite 1540
Austin, TX 78701
Telephone: (512) 717-4485
Facsimile: : (512) 717-4495

*Counsel for Plaintiff TBL Holdings LLC*