# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **TBL HOLDINGS LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:19-cv-00038-ADA** |
| | § | |
| **SIGNIFY NORTH AMERICA** | § | **JURY TRIAL DEMANDED** |
| **CORPORATION,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## SIGNIFY NORTH AMERICA CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Signify North America Corporation ("Signify North America") responds to and answers the First Amended Complaint for Patent Infringement of Plaintiff TBL Holdings LLC ("Plaintiff" or "TBL Holdings") as follows:

## PARTIES

1.      Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 1, and on that basis, denies them.

2.      Admitted that Signify North America Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 200 Franklin Square Drive, Somerset, New Jersey 08873. Admitted that Signify North America is registered to do business in the State of Texas and can be served through its registered agent corporation, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street Suite 620, Austin, TX 78701. All remaining allegations of paragraph 2 are denied.

3.     Denied.

4.     Denied.

## JURISDICTION AND VENUE

5.     Admitted that the Complaint purports to arise under the patent laws of the United States, and that this Court has subject matter jurisdiction over patent actions under 28 U.S.C. §§ 1331 and 1338(a). All remaining allegations of paragraph 5 are denied.

6.     Admitted that Signify North America is registered to do business in the State of Texas and can be served through its registered agent corporation, Corporation Service Company dba CSC – Lawyers Incorporating Service Company, located at 211 E. 7th Street Suite 620, Austin, TX 78701. All remaining allegations of paragraph 6 are denied.

7.     Signify North America does not contest venue in this District, but denies that this venue is the most convenient. All remaining allegations of paragraph 7 are denied.

## OVERVIEW OF U.S. PATENT NO. 7,180,529

8.     Admitted that the cover of U.S. Patent No. 7,180,529 ("the '529 patent") lists a filing date of December 19, 2002, an issue date of February 20, 2007, and the title as "Immersive Image Viewing System and Method." Also admitted that Exhibit 1 appears to be a copy of the '529 patent. All remaining allegations of paragraph 8 are denied.

9.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9, and on that basis, denies them.

10.    Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10, and on that basis, denies them.

11.    Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11, and on that basis, denies them.

- 2 -

12.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12, and on that basis, denies them.

13.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13, and on that basis, denies them.

14.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14, and on that basis, denies them.

15.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 15, and on that basis, denies them.

16.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16, and on that basis, denies them.

17.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17, and on that basis, denies them.

18.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18, and on that basis, denies them.

19.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 19, and on that basis, denies them.

20.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 20, and on that basis, denies them.

21.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 21, and on that basis, denies them.

## COUNT I
## ALLEGED INFRINGEMENT OF U.S. PATENT NO. 7,180,529

22.     To the extent this paragraph requires a response, denied.

23.     Signify North America is without knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 23, and on that basis, denies them.

24.     Admitted that Signify North America sells, imports and/or offers for sale Philips Hue branded products in the United States including the Hue Bridge, the Hue application, the Hue Sync application, Hue E26 light bulbs, Hue PAR38 light bulbs, Hue BR30 light bulbs, Hue E12 light bulbs, Hue GU10 light bulbs, Hue PAR16 light bulbs, Hue Lightstrips, Hue light bars, Hue Beyond ceiling lights and table lamps, Hue Signe floor lights and table lights, Hue Bloom light bulbs, Hue Ascend floor lights, table lights, pendants, and wall lights, Hue Enchant pendants, and Hue Wellness table lamps. All remaining allegations of paragraph 24 are denied.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

**PRAYER FOR RELIEF**

These paragraphs set forth the statement of relief requested by Plaintiff to which no response is required. Signify North America denies that Plaintiff is entitled to any of the requested relief and denies any allegations contained to which a response is required.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**Non-infringement**

Signify North America does not and has not infringed any valid and enforceable claim of the '529 patent (as described *infra* in Signify North America's Counterclaims).

### SECOND AFFIRMATIVE DEFENSE
**Invalidity**

The claims of the '529 patent are invalid for failing to satisfy the requirements of the Patent Act, 35 U.S.C. § 1 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103 and 112 (as described *infra* in Signify North America's Counterclaims).

### THIRD AFFIRMATIVE DEFENSE
**Limitation on Damages**

Plaintiff's claim for damages is limited at least under 35 U.S.C. §§ 286, 287, or 288 because (i) Plaintiff cannot recover damages for more than 6 years prior to filing suit, and (ii) the '529 patent contains invalid claims.

## COUNTERCLAIMS

Defendant and Counterclaim-Plaintiff Signify North America Corporation ("Signify North America Corporation") counterclaims against Plaintiff and Counterclaim-Defendant TBL Holdings LLC ("TBL Holdings LLC") as follows:

### NATURE OF THE ACTION

1.      These Counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Act, 35 U.S.C. § 1 *et seq.* Signify North America seeks declarations that: (i) it does not infringe any valid, enforceable claim of United States Patent No. 7,180,529 ("the '529 patent"); and (ii) the claims of the '529 patent are invalid.

## PARTIES

2.     Signify North America Corporation is a corporation organized and existing under the laws of Delaware with its principal place of business at 200 Franklin Square Drive, Somerset, New Jersey 08873.

3.     TBL Holdings asserts in its Complaint that it is a Texas limited liability company with its principal place of business located at 2307 Rio Grande St., Austin, Texas 78705.

## JURISDICTION

4.     This Court has subject matter jurisdiction over Signify North America's Counterclaims pursuant to 28 U.S.C. §§ 1331, 1367, 1338, 2201, and 2202.

5.     By filing the Complaint in this Court, TBL Holdings has consented to personal jurisdiction in this Court.

6.     Subject to Signify North America's denials, venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(b), and because Signify North America's Counterclaims arise from facts and circumstances alleged in TBL Holdings' Complaint that it filed in this District.

## COUNTERCLAIM ONE
### Declaration of Non-infringement of the '529 Patent

7.     Signify North America incorporates paragraphs 1-6 of this Counterclaim as if fully set forth herein.

8.     In its Complaint, TBL Holdings alleges that Signify North America directly and indirectly (inducement) infringes the '529 patent.

9.     As a result of TBL Holdings' allegation, an actual and justiciable controversy has arisen and now exists between the parties as to whether Signify North America has infringed any valid and enforceable claim of the '529 patent. This controversy has sufficient immediacy and reality to warrant the issuance of declaratory judgment.

10.     Signify North America has not infringed and is not infringing any valid and enforceable claim of the '529 patent directly or indirectly. Such claims include at least asserted claim 14. As alleged in Counterclaim Two, the '529 patent is invalid so it cannot be infringed. Additionally, Signify North America lacks the requisite intent to induce infringement of the '529 patent at least because of Signify North America's good faith belief that the '529 patent is invalid (for at least the reasons discussed *infra*). Further, Signify North America cannot infringe at least claim 14 of the '529 patent because (1) the Hue application and Hue Sync app application do not display a scene on a first viewing area, the scene comprised of at least one image and having image content; and (2) the Hue application and Hue Sync app application do not coordinate the simultaneous display of the scene and the lighting environment on the first and second viewing areas, respectively. These examples of non-infringement are intended to be illustrative and not exhaustive, and Signify North America reserves its rights to assert any other bases of non-infringement.

11.     This is an exceptional case under 35 U.S.C. § 285 because, on information and belief, TBL Holdings filed its Complaint against Signify North America with knowledge of the facts set forth in this Counterclaim.

12.     Signify North America is entitled to a judicial declaration that it has not and does not infringe directly or indirectly any valid, enforceable claim of the '529 patent.

## COUNTERCLAIM TWO
### Declaration of Invalidity of the '529 Patent

13.     Signify North America incorporates paragraphs 1-12 of this Counterclaim as if fully set forth herein.

14.     In its Complaint, TBL Holdings alleges that Signify North America infringes the '529 patent while only specifically asserting claim 14.

15.     As a result of TBL Holdings' allegation, an actual and justiciable controversy exists between the parties as to whether the '529 patent is invalid. This controversy has sufficient immediacy and reality to warrant the issuance of declaratory judgment.

16.     The '529 patent is invalid for failure to comply with the provisions of 35 U.S.C. §§ 102 and 103. The following prior art references comprise exemplary invalidating references that, alone or in combination, render all of the claims of the '529 patent invalid (including asserted claim 14):

**Color Kinetics (predecessor of Signify North America) references:**

- U.S. Patent No. 6,166,496, entitled "Lighting Entertainment System," issued on December 26, 2000. For example, the '496 patent states: "In another embodiment of the present invention, depicted in FIG. 85, the signal-generating device 504 may be a generator of a television, stereo, or other conventional electronic entertainment signal. That is, the lighting control signal can be embedded in any music, compact disc, television, videotape, video game, computer web site, cybercast or other broadcast, cable, broadband or other communications signal. Thus, for example, the signal for the microprocessor may be embedded into a television signal, so that when the television signal is processed by the receiver, a microprocessor processes certain portions of the bandwidth of the television signal for signals relating to the room lights. In this embodiment, the color and intensity of room lights, as well as other lighting effects, may be directly controlled through a television signal. **Thus, a television signal may instruct the room lights to dim at certain points during the presentation, to strobe to different colors at other points, and to flash at other points. The signals are capable of controlling each LED, so that a wide variety of effects, such as those more particularly described herein, may be obtained. Among other things, selected color washes may enhance visual effects during certain television or movie scenes. For example, the explosion scene in a movie or on a computer game, could cause lights in the room to flash a sequence or change to a specified color. A sunset in a movie scene could be imitated by a sunset generated by the room lights.** Alternatively, a music CD, DVD disk, audio tape, or VHS tape could contain room color, intensity or lighting positional data. The present invention may be embodied not only in television signals, but in any other signal-based source, such as music, film, a website, or the like, so that the lighting environment, or specific lights, whether in the home, at work, or in a theater, can be matched to the entertainment source." (Column 47, line 60 to column 48, line 26, emphasis added.) In addition, the '496 patent states: "The entertainment system may include an illumination source 501, which may be part of a group of such illumination sources 501. The illumination source 501, in this embodiment of the invention, may be a light module 100 such as that disclosed above. Referring to FIG. 85, the illumination source 501 may be disclosed about a space 503 in which an

entertainment system 561 is located. The illumination system may include the illumination sources 501, as well as an entertainment device 514. The illumination source 501 may include a receiver 505 for receiving a control signal to control the illumination source 501. The control signal can be any type of control signal capable of controlling a device, such as a radio frequency signal, an electrical signal, an infrared signal, an acoustic signal, an optical signal, or any other energy signal." (Column 49, lines 18-32.) Further, the '496 patent states: "**Thus, for example, the room lights may be synchronized and controlled to create different conditions simultaneously with events that occur in programs that are being displayed on a television**." (Column 49, lines 60-64, emphasis added.)

- International Publication No. WO2002040921 A2, entitled "Systems and Methods for Digital Entertainment," published on May 23, 2002. For example, the '921 publication states: "**The present disclosure sets forth improvements to computer games and other computer applications through the coordinated control of lighting systems that illuminate the environment of the user in coordination with the play of a game or the use of an application.** In embodiments, the lighting systems disclosed herein change the illumination of the user's real world environment in coordination with events, attributes and objects of a computer game. In an embodiment there is disclosed a system for imparting information using a lighting system. **The system includes a computing device including a video display; a lighting system in communication with the computing device for producing illumination; and a software application for dynamically controlling the illumination in response to or in coordination with information presented on the video display so as to impart information to a user**." (Page 2, lines 5-14.)

**Other References:**

- U.S. Patent No. 5,026,152, entitled "Enhanced Lighting System," issued on June 25, 1991. For example, the '152 patent states: "The programmable lighting panels 170 are a plurality of lights that cover the walls of the movie theater auditorium from top to bottom, from the front to the rear of the theater. **The programmable lighting panels 170 can be programmed to interact with the film being shown, with trailers, and with any type of light and sound shows before or after the film, or with any other enhancements for theatrical effects**." (Column 4, lines 4-11, emphasis added.)

- GeniusPro Lightpalette Operator's Guide, Lighting control operating software v2.4, dated March 2000. For example, the GeniusPro Lightpalette Operator's Guide states: "**This function is primarily designed to meet the lighting control needs of 'themed environments,' where the requirement for playback of show synchronized to SMPTE audio of video time codes**. The purpose is to create a light show comprising SMPTE time-stamped events for use with a Strand Lighting 510i, or 310 lighting control panel. The sequence of events is based on previously defined cues, effects, macros and submasters." (Page 52, emphasis added.)

- U.S. Patent Publication No. 20020113909 A1, entitled "Methods and Devices for Alternative Designs of Interior Spaces," published on August 22, 2002. For example,

the '909 publication states: "**The system may also contain a number of lighting elements that are controlled by the central processing unit to mimic the lighting conditions of an environment displayed in the video images to further alter the appearance of the interior space**." (Paragraph 0011, emphasis added.) Further, the '909 publication states: "In conjunction with the video images, there are lighting aspects of the interior space. The lighting in any retail space is a major factor in creating ambiance. Most retail spaces are lit with standard fluorescent lighting that is hard on the eyes and unflattering to the people and products contained within the space. **The central processor controls the at least a portion of the lighting of the interior space and is coordinated with the video images.** For example, a retailer featuring products for the beach, such as swimwear, could display video images on a number of video display screens situated around the store to create the illusion to their customers that they are staring out onto a beach somewhere in the Caribbean. The retailer could use lighting elements equivalent to natural outdoor lighting thereby adding to the buyer's experience of feeling that they are actually at the beach. Additionally, the use of neon or other novel lighting techniques, such as washing a wall in flamingo pink and sea green lighting, to further increase the customer's enjoyment of an entertainment experience." (Paragraph 0025, emphasis added.)

On information and belief, other prior art will be identified during discovery. Signify North America expressly reserves its rights to identify and assert additional prior art as may become available or apparent during pretrial proceedings.

17.     The claims of the '529 patent are invalid for failing to comply with at least one or more provisions of 35 U.S.C. §112. By way of example, claim 14 of the '529 patent is invalid as indefinite under Section 112 on the grounds that at least the phrase "such that the lighting environment enhances the coordinated displayed scene to generate an immersive viewing scene" in the claim is vague and indefinite.

18.     Further, at least claim 14 of the '529 patent is invalid for failing to comply with at least one or more provisions of 35 U.S.C. §101. By way of example, claim 14 of the '529 patent does not qualify as a statutory process under 35 USC §101 because claim 14 is directed to an abstract idea. Furthermore, claim 14 merely recites "displaying" and "coordinating" steps which are well-understood, routine, conventional activities and not patent eligible under 35 USC §101.

19.     This is an exceptional case under 35 U.S.C. § 285 because, on information and belief, TBL Holdings filed its Complaint against Signify North America with knowledge of the facts set forth in this Counterclaim.

20.     Signify North America is entitled to a judicial declaration and order that the '529 patent is invalid.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Signify North America requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Signify North America prays that the Court enter a judgment:

(i)     dismissing TBL Holdings' Complaint with prejudice;

(ii)    declaring that Signify North America does not directly infringe any asserted claim of the '529 patent;

(iii)   declaring that Signify North America does not induce infringement of any asserted claim of the '529 patent;

(iv)    declaring that the asserted claims of the '529 patent are invalid;

(v)     declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding Signify North America its reasonable costs and attorneys' fees; and

(vi)    granting such other and further relief to Signify North America that this Court deems just and proper.

April 12, 2019

Respectfully Submitted,

*/s/ Jeremy P. Oczek*
Jeremy P. Oczek (admitted *pro hac vice*)
NY BAR NO. 4425930 / MA BAR NO. 647509
BOND, SCHOENECK & KING, PLLC
200 Delaware Avenue, Suite 900
Buffalo, NY 14202-2107
(716) 416-7037 –Telephone
(716) 416-7337 – Facsimile
jpoczek@bsk.com

Stacey V. Reese
BAR NO. 24056188
STACEY V. REESE LAW PLLC
910 West Avenue, Suite 15
Austin, Texas 78701
(512) 535-0742 – Telephone
(512) 233-5917 – Facsimile
stacey@staceyreese.law

COUNSEL FOR DEFENDANT AND
COUNTERCLAIM-PLAINTIFF SIGNIFY
NORTH AMERICA CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service are being served April 12, 2019, with a copy of this document via the Court's CM/ECF system.

*/s/ Jeremy P. Oczek*
Jeremy P. Oczek